IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| THEOPOLIS REESE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 313-048 |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,[1] | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Theopolis Reese ("Plaintiff") appeals the decision of the Commissioner of Social Security (the "Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

I.  BACKGROUND

Plaintiff applied for DIB and SSI on November 9, 2010, alleging a disability onset date of June 15, 2007. Tr. ("R"), pp. 146-58. The Social Security Administration denied Plaintiff's applications initially, R. 75-78, and on reconsideration R. 88-94. Plaintiff

---
[1] For ease of reference, the Court will hereinafter refer to the Acting Commissioner as "Commissioner."

requested a hearing before the Administrative Law Judge ("ALJ"), R. 96-98, and the ALJ held a hearing on January 31, 2013. R. 29-70. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Randolph Salmons, a Vocational Expert ("VE"). Id. On February 15, 2013, the ALJ issued an unfavorable decision. R. 7-27.

Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since June 15, 2007, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* & 416.971 *et seq.*).

2. The claimant has the following severe impairments: major depression; anxiety; chronic obstructive pulmonary disease (COPD), moderate; spontaneous pneumothorax, status post-surgery; generalize degenerative joint disease; obesity; arthritis; and obstructive sleep apnea (20 C.F.R. §§ 404.1520(c) & 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform light work[2] as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the ability to lift and/or carry 20 pounds occasionally, 10 pounds frequently; stand and/or walk up to 6 hours in an 8 hour workday; sit up to 6 hours in an 8 hour workday; perform frequent bilateral pushing and/or pulling with the upper and lower extremities; frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl; occasionally

---

[2]"Light work" is defined as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it involves sitting most of the time with some pushing and pulling or arm or leg controls. . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

2

climb ladders, ropes or scaffolds; and perform frequent overhead reaching with the left upper extremity. The claimant must avoid concentrated exposure to extreme heat and cold; humidity; and environmental irritants. The claimant is limited to simple and routine tasks; simple addition and subtraction; and work in which instructions are communicated orally, rather than in writing. The claimant is limited to work in which reading comprehension is not an essential element of the position. The claimant also cannot perform work with fast-paced production or high quota demands or work requiring the preparation of written reports. Thus, the claimant is unable to perform any past relevant work. (20 C.F.R. §§ 404.1565 and 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including housekeeper, fast-food worker, and garage cashier. (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a).) Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from June 15, 2007, through February 15, 2013 (the date of the ALJ's decision) (20 C.F.R. § 404.1520(g) and 416.920(g)).

R. 13-21.

When the Appeals Council denied Plaintiff's request for review, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in her utilization of the Medical Vocational Guidelines ("the Grids") in that she classified Plaintiff as a "younger person" rather than a "person closely approaching advanced age," found Plaintiff was not illiterate, and failed to apply Rule 202.09 of the Grids to find Plaintiff disabled; and, (2) the ALJ failed to fully develop the record by refusing Plaintiff's request for a consultative examination with a psychologist. See doc. no. 17 ("Pl.'s Br."). The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should therefore be affirmed. See doc. no. 18 ("Comm'r's Br.").

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (*per curiam*). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence

is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. Rule 202.09 of the Grids Does Not Apply Because Substantial Evidence Supports the ALJ's Conclusion that Plaintiff Is Literate.

Plaintiff asserts that the ALJ erred in failing to apply Rule 202.09 of the Grids to find Plaintiff disabled. Pl.'s Br., pp. 7-10. Rule 202.09 provides that a person closely approaching advanced age who is illiterate and has unskilled or no previous work experience is disabled. Plaintiff maintains that he satisfies all three requirements because he is illiterate, has unskilled work experience, and his age, when properly classified, is closely approaching advanced age. The ALJ properly found that Plaintiff is not illiterate, and therefore Plaintiff cannot qualify as disabled under Rule 202.09.

The Commissioner's regulations define illiteracy as "the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. §§ 404.1564(b)(1) & 416.964(b)(1). The ALJ determined Plaintiff had a limited education,

R. 20, which the regulations define as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is limited education." 20 C.F.R. §§ 404.1564(b)(3) & 416.964(b)(3).

As the ALJ observed, Plaintiff reached the eleventh grade. R. 10. Even if, as Plaintiff asserts, he was in remedial reading classes and tested at a fourth grade reading level in eleventh grade, (Pl.'s Br., p. 8), this does not show that he cannot read or write a simple message or had little or no formal education, see 20 C.F.R. §§ 404.1564(b)(1) & 416.964(b)(1). The ALJ also acknowledged prison records explaining that Plaintiff could not participate in a drug abuse program because of his difficulty with reading and writing. R. 19, 482. However, as discussed at the hearing and pointed out in the Commissioner's briefing, the record shows only that he was not capable of reading and comprehending the instructional materials as necessary to successfully participate in the prison program – not that Plaintiff could not read and write at all. R. 42-43; Comm'r's Br., p. 7.

Additionally, the ALJ noted, and the record supports, multiple sources stating Plaintiff "had no barriers to learning as well as no problems reading." R. 18 (citing R. 400); see also R. 196 (self report of following written instructions "O.K."); R. 224 (third party report that Plaintiff follows written instructions "well"); R. 508 (acknowledging Plaintiff had been able to report prior earnings as a handyman to social security administration). Moreover, although Plaintiff sought and received treatment for depression and anxiety, there were no reports of decreased intellectual functioning. R. 19. At an initial psychiatric evaluation performed at the Community Mental Health

Center of Middle Georgia, Cathy Williams, M.D., acknowledged Plaintiff "reports difficulty with reading," but Dr. Williams stated, "Intellectual functioning appeared average." R. 18 (citing R. 448).

In sum, the ALJ's consideration of Plaintiff's reported level of education and acknowledgment of difficulty reading, but not an inability to read as defined in the regulations, was a proper method for analyzing whether Plaintiff's was illiterate.[3] See Black v. Comm'r of Soc. Sec., No. 2:09-cv-762-FtM-36SPC, 2011 WL 1002811, at * 1 (M.D. Fla. Mar. 22, 2011) (finding no error in characterizing claimant has having limited education rather than as illiterate after reviewing level of tenth grade education and record evidence showing low-level reading ability rather than illiteracy under regulatory definition); Shumake v. Astrue, No. 3:09cv265/RV/EMT, 2010 WL 3001430, at * 11 (N.D. Fla. July 9, 2010) (testimony that claimant who attended school through ninth grade could not read or spell well and had a learning disability as a youngster does not reflect *inability* to write or read as required under regulatory definition of illiteracy), *adopted by*, 2010 WL 3001424 (N.D. Fla. July 27, 2010).

None of Plaintiff's arguments persuades the Court the ALJ erred in her analysis. Plaintiff asserts the ALJ made an inconsistent decision by finding he had a limited education (R. 20), rather than finding he was illiterate, yet restricting his RFC to jobs in which instructions are communicated orally, reading comprehension is not essential, and no written reports are required. Pl.'s Br., p. 9. Stated otherwise, Plaintiff argues that because the ALJ "limited him to jobs where literacy was not required," the only

---

[3]Plaintiff's citation to Wolfe v. Chater, 86 F.3d 1072 (11th Cir. 1996) is inapposite. Pl.'s Br., p. 8. In that case, "[t]he only specific evidence of Wolfe's reading level came from the vocational expert, who testified that Wolfe could only read five first grade words." Wolfe, 86 F.3d at 1076.

consistent conclusion is that Plaintiff is illiterate. Id. The Court disagrees because nothing in Plaintiff's arguments establishes that he meets the regulatory definition of illiteracy. The ALJ's RFC thoughtfully considers Plaintiff's difficulty reading and writing, but never suggests that he is unable to read and write.

Plaintiff primarily points to school records showing limited achievement and a letter from prison officials explaining Plaintiff was not qualified to participate in a drug treatment program that would have allowed for an earlier release date because "he was not able to comprehend the didactic materials without being reliant on other participants to read and write his assignments." Pl.'s Br., p. 8 (citing R. 482, 498-504). Plaintiff undoubtedly has difficulty reading, but as discussed above, the ALJ properly explained why Plaintiff's difficulties did not qualify as illiteracy under the regulations. See 20 C.F.R. §§ 404.1564(b)(1) & 416.964(b)(1).

Because substantial evidence supports the conclusion that Plaintiff is not illiterate as defined in the Commissioner's regulations, Plaintiff cannot qualify for disability under Rule 202.09 of the Grids under any circumstance, and the Court need not address Plaintiff's arguments concerning the proper classification of his age and whether his prior work was unskilled, (Pl.'s Br., pp. 7, 9-10). Unable to resolve Plaintiff's disability status by application of the Grids, the ALJ properly consulted a VE at step five of the sequential evaluation process to show the existence of other types of substantial gainful employment that Plaintiff could perform given his age, education, previous work experience, and RFC. See Watson v. Astrue, 376 F. App'x 953, 956-58 (11th Cir. 2010) (*per curiam*) (describing circumstances of acceptable use by an ALJ of the Grids, services of VE, or combination of both to carry Commissioner's burden to show a claimant can make

adjustment to other available work when he cannot return to past relevant work); see also R. 20-21, 59-69 (discussing ALJ's fifth step analysis of availability of jobs in national economy Plaintiff can perform that was based on testimony provided at hearing by VE). The VE identified jobs Plaintiff could perform, (see R. 20-21), and Plaintiff's arguments concerning the ALJ's alleged errors in utilizing the Grids form no basis for reversal or remand.

> B. **The ALJ Properly Rejected Plaintiff's Request for a Consultative Psychological Evaluation.**

Plaintiff also argues the ALJ failed to fully develop the record by refusing Plaintiff's request for a consultative examination with a psychologist to "determine his IQ scores and functioning level." Pl.'s Br., pp. 10-11; R. 28, 37. Plaintiff maintains without such a consultative examination, the ALJ did not have sufficient information to make a determination on his claims. The Commissioner counters no consultative examination was needed because, as the ALJ explained in her decision, the record already contained multiple pieces of evidence concerning Plaintiff's mental capabilities. Comm'r's Br., pp. 8-10.

The ALJ is under a duty to inquire fully and to fairly develop the record. Miles v. Chater, 84 F.3d 1397, 1401 (11th Cir. 1996); Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). In fulfilling her duty to conduct a full and fair inquiry, the ALJ is not required to obtain additional information by ordering a consultative examination unless the record establishes that such an examination is necessary to enable an ALJ to render an

informed decision. Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999) (*per curiam*); Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988).[4]

Here, the ALJ provided the following explanation for her decision to reject Plaintiff's request for a psychological consultative examination:

> When there is insufficient medical evidence about a claimant's impairment to make a determination as to disability, medical tests or examinations may be performed at the agency's expense (20 C.F.R. 404.1517). However, the medical evidence in this case contains sufficient treatment records regarding the claimant's mental health impairments or intellectual functioning. These record[s] show the claimant received treatment for depression and anxiety at the Community Mental Health Center of Middle Georgia in 2010 and 2011 (Ex. 14F). It was specifically reported on initial evaluation that the claimant's intellectual functioning appeared average (Ex. 14F/3). Additionally, while the claimant only completed the eleventh grade, the claimant's work history does not show intelligence testing is necessary (Exs. 3E, 14E, and 19F). Specifically, the claimant successfully worked providing handyman (sic) through self-employment which the vocational expert testified was semi-skilled work. Therefore, the undersigned finds that based on review of the record as a whole, an additional consultative examination is not necessary.

R. 10.

The explanation provided by the ALJ immediately distinguishes this case from the first case upon which Plaintiff relies, Ford v. Sec'y of Health & Human Servs., 659 F.2d 66 (5th Cir. Unit B Oct. 1981). In that case, the claimant not only testified about her trouble sleeping, crying spells and nervousness, but her physician had prescribed medication for nervousness, and a social worker from a mental health clinic signed a report that the claimant was emotionally unstable and unable to work because of mental and physical conditions. Ford, 659 F.2d at 69. In ruling a consultative examination was needed, the court of appeals specifically noted, "The administrative law judge failed to

---

[4]The regulations also provide that the ALJ may order a consultative examination when warranted. See 20 C.F.R. §§ 404.1517 & 416.917.

make an express factual finding with regard to the severity of appellant's alleged mental impairment and failed to specify his reasons for denying appellant's request for a consultative psychiatric examination." Id. Similarly, in the second case upon which Plaintiff relies, the claimant's physicians suggested she might have a psychological condition and had prescribed Valium for her anxiety. Pl.'s Br., p. 11 (citing McCall v. Bowen, 846 F.2d 1317, 1320 (11th Cir. 1988) (*per curiam*)).

In contrast, the ALJ here explicitly stated her reasons for denying the request on the first page of her decision and then discussed Plaintiff's mental health impairments and intellectual functioning throughout her opinion as part of her discussion of the record evidence. See R. 10-21. Plaintiff maintains that his testimony concerning his reading and writing abilities (R. 39-46), inability to participate in a prison drug abuse program, and his standardized testing scores showing that he read at a fourth grade level when he was in eleventh grade (R. 498-504) "combine to indicate a consultative psychological evaluation is needed." Pl.'s Br., p. 11. However, as discussed in detail in Part III.A, *supra*, the medical evidence of record does not suggest functioning problems of the level suggested by Plaintiff. Moreover, the records specifically cited by the ALJ in her explanation for denying the request for a consultative examination provide further support for the conclusion that she had sufficient information to make her determination. See, e.g., R. 10 (citing Ex. 3E (R. 183)) (reporting seventeen years of prior work as handyman required using machines, tools, or equipment, using technical knowledge or skills, and writing, completing reports, or performing like duties). Nor has Plaintiff pointed to any equivocal medical evidence or gaps in evidence suggesting a problem that

the ALJ did not discuss and resolve on the sufficiently developed record before her. Rather, Plaintiff simply disagrees with the determination made by the ALJ.

In sum, the ALJ did not err in refusing the request for a consultative examination because the record had been fairly developed such that the ALJ had sufficient information to render an informed decision. Indeed, the ALJ's determination of Plaintiff's RFC accounted for his limitations supported by substantial evidence in the record, including restrictions to account for Plaintiff's difficulties with reading and writing. See Finding 4, pp. 2-3, *supra*. Thus, Plaintiff's argument on this point forms no basis for reversal or remand.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 11th day of July, 2014, at Augusta, Georgia.

BRIAN K. EPPS<br>
UNITED STATES MAGISTRATE JUDGE<br>
SOUTHERN DISTRICT OF GEORGIA